IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CT-3216-D

JESSIAH JAMES HUBBARD,                   )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )          **ORDER**
                                         )
JOSHUA H. STEIN, et al.,                 )
                                         )
            Defendants.                  )

On September 16, 2025, Jessiah James Hubbard ("Hubbard" or "plaintiff"), a state inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. Hubbard moves for full public disclosure [D.E. 4, 12, 15], to expedite and compel discovery [D.E. 15], for injunctive relief [D.E. 19], and to amend the complaint to add the City of Raleigh as a defendant [D.E. 13]. The court grants Hubbard's motion to amend and reviews all of Hubbard's filings. As explained below, the court dismisses the action for failure to state a claim.

I.

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must review and dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. §§ 1915A(a)–(b)(1). A frivolous claim "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Legally frivolous claims are based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotation and citation omitted). Factually frivolous claims lack an "arguable basis" in fact.

Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192–93 (4th Cir. 2009).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Hubbard names over 30 defendants in his complaint and alleges they violated his First, Eighth, and Fourteenth Amendment rights. See [D.E. 1] 7–9; [D.E. 1-1] 1–24. Hubbard names as defendants the following judges: North Carolina Superior Court Judge Paul C. Ridgeway ("Judge Ridgeway"), North Carolina Superior Court Judge A. Graham Shirley ("Judge Shirley"), North Carolina Superior Court Judge Vincent Rozier ("Judge Rozier"), North Carolina Superior Court Judge Claire V. Hill ("Judge Hill"), North Carolina Superior Court Judge Cindy King Sturges

2

("Judge Sturges"), North Carolina Superior Court Judge Robert H. Hobgood ("Judge Hobgood"), Chief United States District Judge Richard E. Myers II ("Judge Myers"), United States District Judge Terrence W. Boyle ("Judge Boyle"), United States Circuit Judge Stephanie Thacker ("Judge Thacker"), United States Circuit Judge Nicole Berner ("Judge Berner"), United States Circuit Judge Barbara Keenan ("Judge Keenan"), United States Circuit Judge Paul Niemeyer ("Judge Niemeyer"), United States Circuit Judge G. Steven Agee ("Judge Agee"), and United States Circuit Judge Toby J. Heytens ("Judge Heytens"). See [D.E. 1] 5–6. Hubbard names as defendants the following prosecutors and defense attorneys: former North Carolina Attorney General Joshua H. Stein ("Stein"),[1] Assistant District Attorney Addison Adcock ("Adcock"), Assistant District Attorney Merideth Allison Gray ("Gray"), standby counsel Nicholas Saparilas ("Saparilas"), standby counsel Douglas Brown ("Brown"), standby counsel Thomas Taylor Manning ("Manning"), and former Federal Public Defender Caryn Strickland ("Strickland"). See [D.E. 1] 5–6. Hubbard also names as defendants Eastern Correctional Institution Warden David May ("May"), Scotland Correctional Institution Warden Mary Locklear ("Locklear"), the North Carolina Court of Appeals, the Supreme Court of North Carolina, the North Carolina Industrial Commission, the North Carolina Attorney General's Office, the North Carolina Judicial Standards Commission, the North Carolina State Bar, the Wake County Detention Center, the North Carolina Department of Adult Correction, the City of Raleigh, and numerous John Does. See id.; see also [D.E. 13] 1–2.

Hubbard has "reason to believe that something may have happened to [his] mother Carmen C. Burns, ex[-]girlfriend Allison Barnes, her child and others connected with [his] circumstances."

---

[1] Hubbard names Stein in his roles as the former North Carolina Attorney General and as the current Governor of North Carolina. See [D.E. 1] 5; [D.E. 1-1] 1–4.

[D.E. 1] 7. Hubbard is "certain that [he is] being lied to by staff/correctional officers concerning numerous 'wellness checks' that [he has] requested." Id. Hubbard alleges that his state criminal trial transcript proves there is a "contract to murder" his family and friends. Id. at 7–9. Hubbard alleges that the transcript proves that defendants talked in code about the "murder contract" when they discussed a thumb drive containing body camera footage, allowed a biased prospective juror to stay on the jury who happened to be a former "contract" administrator and had also served as a juror in a "murder" trial, targeted his mother through a prospective juror named Carlos Melvin ("Melvin") whose name contains the sequence of letters spelling his mother's first name, targeted his ex-girlfriend's child through Melvin because Melvin and his ex-girlfriend's child were both fourteen years old, and targeted his ex-girlfriend through a prospective juror because his ex-girlfriend and the juror both had a disability. See id.

Hubbard alleges that his complaint "is specifically about the welfare and safety of [his] family and others connected with [his] circumstances. And how the defendants have exploited [his] already limit[ed] access to the outside world in a manner that continues to prevent [him] from raising public awareness. From raising public awareness on an issue concerning the welfare and safety of women and children nationwide." Id. at 9. Hubbard alleges that "[t]he motive behind all these actions towards [him] and that 'murder contract' is because [he has] proven with common sense that the 'sex offender registry' is not serving a public interest. And that it is causing victims circumstances which should've been prevented with common sense." Id. Hubbard alleges that defendants "are involved in both the 'murder contract,' his circumstances at Wake County Det. Cent. and treatment within the NC Dept. of Adult Corrections." Id. Hubbard seeks "$11,000,000.00 for each murder of either a family member or anyone else close or connected to [his] circumstances[;] [$]5,000,000.00 for all other hindering, humiliating, or injurious

4

circumstances described herein[;] [a]n order approving regulated access to internet/social media for those incarcerated in the interests of rehabilitation and social justice[;] [and] [t]he arrest of all parties involved in the 'murder contract' and [his] false imprisonment under the color of the law." Id. at 10.

Section 1915 permits federal courts "to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992) (citation omitted); see 28 U.S.C. § 1915(d); Neitzke, 490 U.S. at 327. Examples of such claims include claims "describing fantastic or delusional scenarios" or claims which are otherwise manifestly "fanciful" or so wholly irrational as to lack any basis in fact. Denton, 504 U.S. at 32–33 (citation omitted); see Neitzke, 490 U.S. at 325, 328; Adams, 40 F.3d at 74–75.

Hubbard's claims that defendants used code words during his trial to discuss a murder contract on his family and friends are non-sensical and delusional. See, e.g., Edge v. Pickler, No. 7:25-CV-370, 2025 WL 2886450, at *3 (E.D.N.C. Aug. 18, 2025) (unpublished), report and recommendation adopted, 2025 WL 2882049 (E.D.N.C. Oct. 9, 2025) (unpublished), aff'd, 2026 WL 226882 (4th Cir. Jan. 28, 2026) (per curiam) (unpublished); Jennings v. Sheppard, No. 2:21-CV-449, 2022 WL 891703, at *4 (D.S.C. Feb. 22, 2022) (unpublished), report and recommendation adopted, 2022 WL 891649 (D.S.C. Mar. 25, 2022) (unpublished); Boyd v. United States, No. 7:20-CV-178, 2020 WL 823099, at *4–5 (D.S.C. Jan. 27, 2020) (unpublished), report and recommendation adopted, 2020 WL 816077 (D.S.C. Feb. 19, 2020) (unpublished); Martin v. Angliker, No. 7:08-CV-488, 2008 WL 4090054, at *1–2 (W.D. Va. Aug. 29, 2008) (unpublished). Thus, the court dismisses the claims.

Hubbard has also named defendants who are immune from or otherwise not amenable to

suit. Judges are absolutely immune from suit, including for acts that are allegedly malicious or corrupt. See, e.g., Stump v. Sparkman, 435 U.S. 349, 355–57 (1978); Pierson v. Ray, 386 U.S. 547, 553–54 (1967); Gibson v. Goldston, 85 F.4th 218, 223 (4th Cir. 2023). Prosecutors are absolutely immune from damages when performing the judicial phase of prosecutorial functions, including initiating a judicial proceeding, appearing in court, or terminating a judicial proceeding. See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 341–43 (2009); Buckley v. Fitzsimmons, 509 U.S. 259, 269–70 (1993); Imbler v. Pachtman, 424 U.S. 409, 427–31 (1976); Safar v. Tingle, 859 F.3d 241, 248–51 (4th Cir. 2017); Dababnah v. Keller-Burnside, 208 F.3d 467, 470 (4th Cir. 2000). Defense attorneys do not act under color of state law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981). Therefore, they are not amenable to suit under section 1983. See id. This principle applies whether defense counsel is privately retained, appointed by the state, or employed as a public defender. See, e.g., Hall v. Quillen, 631 F.2d 1154, 1155–56 (4th Cir. 1980); Deas v. Potts, 547 F.2d 800, 800 (4th Cir. 1976) (per curiam). Thus, the court dismisses Hubbard's claims against Judge Ridgeway, Judge Shirley, Judge Rozier, Judge Hill, Judge Sturges, Judge Hobgood, Judge Myers, Judge Boyle, Judge Thacker, Judge Berner, Judge Keenan, Judge Niemeyer, Judge Agee, Judge Heytens, Stein, Adcock, Gray, Saparilas, Brown, Manning, and Strickland.

As for Hubbard's claims against Stein, May, and Locklear concerning their supervisory roles as the governor and prison wardens, the doctrine of respondeat superior does not generally apply to a section 1983 action. See, e.g., Iqbal, 556 U.S. at 677; Monell, 436 U.S. at 694; King v. Riley, 76 F.4th 259, 269–70 (4th Cir. 2023); Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Instead, where a defendant is sued on the basis of

6

supervisory liability, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter, 164 F.3d at 221 (quotations and citation omitted); see King, 76 F.4th at 269; Shaw, 13 F.3d at 799.

Hubbard's conclusory allegations fail to state a supervisory-liability claim. See, e.g., Newell v. N.C. Indus. Comm'n, No. 5:20-CT-03366, 2021 WL 3121491, at *2 (E.D.N.C. July 16, 2021) (unpublished), aff'd, 2023 WL 1433635 (4th Cir. 2023) (per curiam) (unpublished); Means v. Higdon, No. 5:21-CT-3267, 2022 WL 1748501, at *3 (E.D.N.C. May 31, 2022) (unpublished); Allen v. Cooper, No. 1:19-CV-794, 2019 WL 6255220, at *3–4 (M.D.N.C. Nov. 22, 2019) (unpublished). Thus, the court dismisses the claims.

To the extent Hubbard alleges that Stein, May, and Locklear violated prison policies, a violation of a prison policy that does not result in a constitutional violation does not create a viable claim under section 1983. See, e.g., King, 76 F.4th at 267–68; Danser v. Stansberry, 772 F.3d 340, 348–49 (4th Cir. 2014); Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished). Additionally, to the extent Hubbard raises a vague and conclusory claim that these defendants violated his First Amendment rights by restricting his access to the internet and social media, Hubbard does not have an unrestricted right of access to the internet. See, e.g., Sebolt v. Samuels, 749 F. App'x 458, 460–61 (7th Cir. 2018) (unpublished); Solan v. Zickefoose, 530 F. App'x 109, 110–11 (3d Cir. 2013) (per curiam) (unpublished); Larson v. Mejia, No. 3 15-CV-1012, 2015 WL 9243812, at *6–7 (N.D. Tex. Nov. 9, 2015) (unpublished), report and recommendation adopted, 2015 WL 9244284 (N.D. Tex. Dec. 17, 2015) (unpublished); Walker v. Clark, No. 2:17-CV-221, 2019 WL 5685340, at *9–11 (N.D. Tex. Feb. 25, 2019) (unpublished) ("[Plaintiff] therefore fails to state a claim that his constitutional rights were violated by the

7

enactment and implementation of a policy that prohibits his possession of a computer and access to social media."), report and recommendation adopted, 2019 WL 5685165 (N.D. Tex. Nov. 1, 2019) (unpublished); Tuvalu v. Woodford, No. CIV S-04-1724, 2006 WL 3201096, at *4 (E.D. Cal. Nov. 2, 2006) (unpublished), report and recommendation adopted, 2008 WL 2774571 (E.D. Cal. July 15, 2008) (unpublished). Thus, the court dismisses Hubbard's claims against these defendants.

As for Hubbard's claims against the North Carolina Court of Appeals, the Supreme Court of North Carolina, the North Carolina Industrial Commission, the North Carolina Attorney General's Office, the North Carolina Judicial Standards Commission, the North Carolina State Bar, the Wake County Detention Center, the North Carolina Department of Adult Correction, and the City of Raleigh, these entities are not "persons" subject to suit under section 1983. See, e.g., Ragland v. Doe, 811 F. App'x 177, 177 (4th Cir. 2020) (per curiam) (unpublished); Preval v. Reno, 203 F.3d 821, 2000 WL 20591, *1 (4th Cir. 2000) (per curiam) (unpublished table decision); Lindsay v. Dep't of Pub. Safety, No. 3:14-CV-158, 2014 WL 1875081, at *2 (W.D.N.C. May 9, 2014) (unpublished); Vandyke v. Francis, No. 1:12-CV-113, 2012 WL 2090649, at *3 (W.D.N.C. June 11, 2012) (unpublished); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989). Thus, the court dismisses Hubbard's claims against these defendants.

As for Hubbard's claims against numerous John Does, John Doe suits are not favored in federal court unless the true identity of an unnamed party can be discovered through discovery or intervention by the court. See, e.g., Chidi Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 2000 WL 903896, at *1 (4th Cir. July 7, 2000) (per curiam) (unpublished table decision); Schiff v. Kennedy, 691 F.2d 196, 197–98 (4th Cir. 1982). Hubbard's claims are vague and nonsensical; therefore, discovery and court intervention will not uncover the unnamed parties' identities. Thus,

8

the court dismisses Hubbard's claims against these defendants.

To the extent Hubbard requests that criminal charges be filed, "the United States and its attorneys have the sole power to prosecute criminal cases in the federal courts," and private citizens cannot petition federal courts to compel the criminal prosecution of another person. Maine v. Taylor, 477 U.S. 131, 136 (1986); see Leeke v. Timmerman, 454 U.S. 83, 86–87 (1981) (per curiam); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Thus, the court dismisses the complaint for failure to state a claim.

As for Hubbard's motion for injunctive relief, Hubbard seeks a court order halting the enforcement of his criminal judgments. See [D.E. 19] 1–4. The court has considered Hubbard's motion for injunctive relief under the governing standard. See, e.g., Benisek v. Lamone, 585 U.S. 155, 161 (2018) (per curiam); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 188 (4th Cir. 2013) (en banc). Hubbard has not plausibly alleged that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Moreover, a writ of habeas corpus is the exclusive remedy for inmates seeking release from their confinement. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Thus, the court denies the motion.

## II.

In sum, the court GRANTS plaintiff's motion to amend the complaint [D.E. 13], DENIES plaintiff's motion for injunctive relief [D.E. 19], and DISMISSES the action for failure to state a

9

claim. The court DENIES AS MOOT the remaining motions [D.E. 4, 12, 15]. The clerk shall close the case.

SO ORDERED. This 5 day of May, 2026.

JAMES C. DEVER III
United States District Judge

10